# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD J. MOLITOR, III,
on behalf of his minor son,
EDWARD J. MOLITOR, IV,

        **Plaintiff,**

      **v.**                     **Case No. 23-CV-1113**

JIM VOUTIRISTAS, et al.,

        **Defendants.**

# DECISION AND ORDER

## 1. Procedural History

Plaintiff Edward J. Molitor, III, on behalf of his minor son, E.J., (hereinafter, "Molitor"), filed a Motion for Partial Summary Judgment. (ECF No. 16.) Molitor's complaint alleges against each defendant, Jim Voutiristas and Laurie Voutiristas, a negligence claim and a strict liability claim. (ECF No. 1.) Molitor's Motion for Partial Summary Judgment relates to the strict liability claims. (ECF Nos. 16; 1, ¶¶ 18-20, 29-31.)

The defendants did not file a response; rather, they filed a letter with the Court advising "we will not be providing a response brief to plaintiff's Motion for Partial

Summary Judgment. We stipulate that the minor child cannot be contributorily negligent under Wisconsin law. We also stipulate that the defendants, Laurie and James Voutiritsas are owners under Wisconsin's Statute 174 and are strictly liable." (ECF No. 19.)

All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 4, 5.) Molitor is a citizen of Illinois and the defendants are citizens of Wisconsin. (ECF No. 17, ¶¶ 1-2.) Therefore, complete diversity of citizenship exists, and because the dispute involves more than $75,000 the Court has jurisdiction under 28 U.S.C. § 1332.

Molitor's motion is ready for resolution.

**2. Facts**

The following facts are taken from Molitor's Proposed Findings of Fact. (ECF No. 17.) The facts are undisputed. (*Id.*)

The defendants are the sole members and owners of a nonprofit called Just Lovin 4's Rescue. (ECF No. 17, ¶ 5.) Through the nonprofit, they rescued four dogs, including a husky named Grizzley. (*Id.*, ¶ 6.) Both defendants were responsible for the dogs, purchasing their food, preparing their meals, cleaning them, and training them. (*Id.*, ¶¶ 7-9.)

The defendants invited Ed and Nancy Molitor and their children to their home twice in June of 2020. (ECF No. 17, ¶¶ 12, 18.) Both visits included the Molitor's five-

year-old child, E.J. (*Id.*, ¶¶ 12-13.) At the first visit, the defendants asked the Molitor family to stand still and allow the rescue dogs to smell them and get adjusted to them. (*Id.*, ¶ 14.) During the rest of the visit the dogs roamed the property freely, and E.J. was seen petting Grizzley. (*Id.*, ¶¶ 15-16.)

On June 27, 2020, the Molitors visited the defendants' property a second time, along with other visitors. (ECF No. 17, ¶ 18.) Again, Grizzley roamed free around the property. (*Id.*, ¶ 19.) This time, no one recalled seeing E.J. pet or hug the dogs. (*Id.*, ¶ 21.) Nancy Molitor noticed E.J. "get[] out of the pool to sit on the stoop near the back door of [the] Defendants' home." (*Id.*, ¶ 22.) She looked away and then heard the dog and heard E.J. scream. (*Id.*, ¶¶ 22-24; *Id.*, Ex. C at 50-52.) At or around the same time, Ed Molitor heard an adult male yell "the dog has him." (*Id.*, ¶ 23.) Ed and Nancy did not see Grizzley bite E.J., but they "knew that he'd been attacked by Grizzley because they saw the dog running away while E.J. was bleeding." (*Id.*, ¶ 27.) The defendants testified that they do not dispute that Grizzley attacked E.J. (*Id.*, ¶¶ 28-29.)

Due to the dog attack, an ambulance took E.J. to the emergency room. (ECF No. 17, ¶ 30.) E.J. suffered severe lacerations and bite marks to his face, back, and chest. (*Id.*, ¶ 31.)

## 3. Summary Judgment Standard

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

### 4. Analysis

Wisconsin Statute section 174.02 creates strict liability for dog owners. *Pawlowski v. Am. Fam. Mut. Ins. Co.*, 777 N.W.2d 67, 71 (Wis. 2009). It provides that "the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property." Wis. Stat. § 174.02(1)(a).

A plaintiff bringing a claim under section 174.02 must show that the defendant owned the dog, the dog caused the plaintiff's injury, and the plaintiff suffered damages. *Pawlowski*, 777 N.W.2d at 69; *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 680 N.W.2d 345, 351 (Wis. 2004). The claim is subject to a contributory negligence defense. *Fandrey*, 680 N.W.2d at 356.

#### 4.1 Owned, Harbored, or Kept

Wisconsin Statute section 174.02 liability applies to "owner[s]." Wis. Stat. § 174.02(1)(a). "Owner" under the statute "includes any person who owns, harbors, or keeps a dog." Wis. Stat. § 174.001(5).

"'Keeping' … generally requires 'exercising some measure of care, custody or control over the dog.'" *Pawlowski*, 777 N.W.2d at 73 (quoting *Pattermann v. Pattermann*, 496 N.W.2d 613, 615 n.4 (Wis. Ct. App. 1992)). Keeping requires "evidence that the person has 'furnished [the dog] with shelter, protection, or food, or that they exercised control over the dog[]." *Armstrong v. Milwaukee Mut. Ins. Co.*, 549 N.W.2d 723, 726 (Wis. 1996) (quoting *Hagenau v. Millard*, 195 N.W. 718, 719 (Wis. 1924)). "'[H]arboring' is often

defined as sheltering or giving refuge to a dog ….” *Pawlowski*, 777 N.W.2d at 73 (quoting *Pattermann*, 496 N.W.2d at 615 n.4).

Molitor contends, and the defendants stipulate, that the defendants were statutory owners of Grizzley. (ECF No. 16 at 3-4; ECF No. 19 at 1.)

The defendants rescued Grizzley, kept him at their home, purchased his food, prepared his meals, fed him, cleaned him, and trained him. (ECF No. 17, ¶¶ 6-9, 15.) Thus, the defendants are the owners of Grizzley under Wisconsin Statute section 174.02.

### 4.2 Causation

To show causation under section 174.02, a plaintiff must show both that the dog was the cause-in-fact of the plaintiff's injuries and was a sufficient legal cause. *Cole v. Hubanks*, 681 N.W.2d 147, 155 (Wis. 2004). “Legal cause” is akin to “proximate cause,” and is a judicial determination, considering the six “public policy factors,” of whether recovery should be precluded. *Fandrey*, 680 N.W.2d at 351-55.

Cause-in-fact exists where the dog was a “substantial factor” in producing the plaintiff's injury. *Fandrey*, 680 N.W.2d at 351-52. There is no dispute that the defendants' dog, Grizzley, was the cause in fact of E.J.'s injuries. (ECF No. 17, ¶¶ 27-29.) E.J. was outside the defendants' house by the pool when his mom heard the dog and E.J. scream and a man yelled “the dog has him.” (*Id.*, ¶¶ 23-25.) E.J.'s parents then saw Grizzley running away while E.J. was bleeding. (*Id.*, ¶ 27.) E.J. had severe lacerations and bite

marks on his face, back, and chest. (*Id.*, ¶ 31.) Considering this undisputed evidence, no genuine issue of material fact exists that must be decided by a jury as to causation.

Therefore, summary judgment in favor of the plaintiff as to cause-in-fact of his injury is appropriate.

But even where a plaintiff otherwise establishes liability, courts may still bar a claim under section 174.02 by finding there is insufficient legal cause. *Pawlowski*, 777 N.W.2d at 79. To determine whether there is a sufficient legal cause, courts use the six traditional public policy factors:

> (1) the injury is too remote from the negligence or (2) too wholly out of proportion to the culpability of the negligent tort-feasor, or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or (4) because allowance of recovery would place too unreasonable a burden upon [a class of tortfeasors], or (5) be too likely to open the way to fraudulent claims, or (6) would enter a field that has no sensible or just stopping point.

*Id.* at 78 (alteration in original) (quoting *Colla v. Mandella*, 85 N.W.2d 345, 348 (Wis. 1957)).

"[W]hen [the court] preclude[s] liability based on 'public policy factors' ... [it] do[es] so in order to assure that 'in cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability.'" *Pawlowski*, 777 N.W.2d at 79 (quoting *Fandrey*, 680 N.W.2d at 354). For example, in *Fandrey*, the Wisconsin Supreme Court found that the public policy factors barred liability where a three-year-old girl and her mother entered their friend's

home without consent while the friends were gone, knew that the dog was normally kept in the home, the owners did not know they were coming, and the owners usually made an effort to keep the dog away from children. 680 N.W.2d at 359-60. The circuit court found that the owners could not have done anything more restrictive to prevent the injury other "than to keep the dog inside their home," as they did. *Id.* at 350, 359. The state supreme court agreed that placing a larger burden on homeowners would be unreasonable. *Id.* at 359.

Unlike the "harsh result[]" of section 174.02 strict liability discussed in *Fandrey*, 680 N.W.2d at 357, no such harsh result is present here. Rather, this is precisely the type of case to which section 174.02 intends to apply strict liability. "The purpose of Wis. Stat. § 174.02 is 'to protect those people who are not in a position to control the dog.'" *Pawlowski*, 777 N.W.2d at 81 (quoting *Armstrong v. Milwaukee Mut. Ins. Co.*, 549 N.W.2d 723, 728 (Wis. 1996)). None of the public policy factors support limiting that liability here.

First, E.J.'s dog-bite injury is not too remote from the defendants' actions (e.g., failure to restrain and control the dog). Rather, this "is the kind of incident that the statute would ordinarily cover." *Pawlowski*, 777 N.W.2d at 81.

Second, E.J.'s injury is not wholly out of proportion to the defendants' culpability. The defendants invited the Molitors, including their children, to their home and knew that Grizzley would be interacting with small children, yet they did not restrain or separate their dog to prevent any injury.

Third, there is nothing "highly extraordinary" about the capability of a large rescue dog running at large to harm a young child invited onto the property. *See Pawlowski*, 777 N.W.2d at 81 ("There is always the risk that a dog will get loose and injure someone. Section 174.02 embodies a legislative judgment that those who own, harbor, or keep a dog are in the best position to reduce the risk of injury and should bear liability for any damages, rather than making those who are injured by no fault of their own suffer without compensation.").

Fourth, allowing Molitor's recovery would not place too unreasonable a burden on dog owners. Rather, it imposes the precise burden that section 174.02 intends: for dog owners to control their dogs such that they do not cause others injury. This type of injury can be easily prevented by "simply separating the dog from … children." *Erdman ex rel. Laughlin v. Progressive N. Ins. Co.*, 796 N.W.2d 846, 851 (Wis. Ct. App. 2011).

Fifth, allowing Molitor's recovery will not open the way for fraudulent claims. The statute requires proof of ownership, negating the threat of fraudulent claims where the plaintiff meets their burden of proof. *Pawlowski*, 777 N.W.2d at 81 (finding that uncontested facts proved defendants were statutory owners of the dog, "create[ing] no

unusual likelihood of fraud"). The uncontested facts demonstrate that the defendants are owners of the dog and the dog bit E.J.; these facts create no unusual risk of fraud.

Sixth, allowing liability will not enter a field with no sensible or just stopping point. To the contrary, allowing liability is supported by the statute, aimed at holding dog owners accountable when their dog bites someone. To hold "[o]therwise, … could … 'open[] the door to expansive immunity from liability.'" *Cole*, 681 N.W.2d at 155 (quoting *Hauboldt v. Union Carbide Corp.*, 467 N.W.2d 508, 513 (Wis. 1991)).

As in the case before the Wisconsin Supreme Court in *Pawlowski*,

> Imposing liability in the present case furthers the legislative policy embodied in Wis. Stat. § 174.02 of protecting innocent people from injury by dogs, of ensuring that an innocent victim of a dog bite recovers compensation, and of making a person who owns, harbors, or keeps a dog responsible for injuries inflicted by the dog. The legislative purpose and policy of § 174.02 would be defeated if the court applied judicial public policy factors to preclude liability in the present case.

777 N.W.2d at 50. Therefore, judicial public policy factors do not bar Molitor's recovery.

### 4.3 Damages

It is undisputed that "E.J. suffered severe lacerations and bite marks to his face, back and chest." (ECF No. 17, ¶ 31.) This is supported by photos of E.J.'s injuries both after the attack and after they scarred. (ECF No. 17 at 68-79.)

Neither party articulates what amount of damages E.J. suffered. Thus, summary judgment is appropriate as to the fact that Molitor established the existence of damages, but not as to the amount.

### 4.4 Contributory Negligence

A defendant's liability under section 174.02 is "[s]ubject to" the plaintiff's contributory negligence. *Fandrey*, 680 N.W.2d at 356. Molitor contends, and the defendants stipulate, that E.J. cannot be contributorily negligent. (ECF Nos. 16 at 4-5; 19 at 1.)

In Wisconsin, "[i]t shall be conclusively presumed that an infant minor who has not reached the age of 7 shall be incapable of being guilty of contributory negligence or of any negligence whatsoever." Wis. Stat. § 891.44. E.J. was five-years old at the time of the incident. (ECF No. 17, ¶ 13.) Accordingly, he cannot be contributorily negligent under Wisconsin law and contributory negligence does not bar Molitor's strict liability claims.

## 5. Conclusion

The parties stipulate, and the Court finds, that Molitor is entitled to recover against the defendants on his strict liability claims under Wisconsin Statute section 174.02. While Molitor established that E.J. suffered damages, a fact issue remains as to the amount thereof.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 16) is **granted**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of November, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge