UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWARD J. MOLITOR, III,
on behalf of his minor son,
EDWARD J. MOLITOR, IV,

                Plaintiff,

        v.                                Case No. 23-CV-1113

JIM VOUTIRISTAS, et al.,

                Defendants.

## DECISION FOLLOWING COURT TRIAL

1. **Findings of Fact**

Edward J. Molitor, IV, known as E.J., was five-and-a-half years old when he was attacked by a Siberian Husky at Jim and Laurie Voutiristas's home. E.J.'s mother, Nancy, who was nearby, heard screams and ran to E.J., finding his face covered in blood. E.J.'s father, Edward Molitor, III, described E.J. as appearing as if he had been shot in the face.

Soon after the incident paramedics administered 25 micrograms of fentanyl for pain, which E.J. said helped, and he stopped screaming. (Ex. 11 at 1.) E.J. was transported by ambulance to Children's Hospital in Milwaukee. After spending the night, he received surgery for a deep laceration spanning the bridge of his nose and

down to a bit below his left eye. (Exs. 2, 3, 4, 5, 6, 7.) Although the laceration was very close to his eye, the injuries did not affect E.J.'s vision or tear duct. E.J. also sustained two lacerations on his right chest that required multiple stitches (Ex. 25) and a puncture wound to his back (Ex. 28 at 5). Post-surgery pain was addressed with acetaminophen. (Ex. 13 at 10.)

Now ten years old, E.J. has been left with a well-faded but visible scar across the bridge and left side of his nose. (Ex. 28 at 1-2.) The scars on his chest are more noticeable in that they are wider, longer (a few centimeters), raised, and discolored in relation to the surrounding skin. (Ex. 28 at 3-4.) The scar from the puncture wound on his back is smaller but similar in appearance to the scars on his chest. (Ex 28 at 5.)

The court granted the plaintiff's unopposed partial summary judgment motion and found the defendants liable for E.J.'s injuries. *Molitor v. Voutiristas*, No. 23-CV-1113, 2024 U.S. Dist. LEXIS 211877 (E.D. Wis. Nov. 20, 2024). A court trial was held on February 5, 2025, with the court acting as finder of fact to address the question of damages. The court has jurisdiction under 28 U.S.C. § 1332(a) and all parties have consented to have this court preside in this matter, *see* 28 U.S.C. § 636(c) (ECF Nos. 4, 5).

Testifying at trial were E.J.'s parents. They described E.J. as an active, athletic, and outgoing child who makes friends easily. He is close to and has no fear of their family dog, a 70-pound lab. However, E.J. sometimes expresses hesitation when he encounters dogs of breeds similar to the one that attacked him. He also appears to get

upset when he sees another person suffer a facial injury, particularly if there is blood. He has encountered such incidents accompanying his father in his work with child and adolescent basketball teams.

E.J.'s parents said he will sometimes bring up the dog attack by, for example, asking what happened to the dog or asking his parents to tell him about the incident. And E.J. may reference the attack when, for example, one of his parents is applying sunscreen to protect his scars. His father said that E.J. exhibits some separation anxiety, which he did not have before the attack, by, for example, wanting a parent to be with him or asking where his father is going even if he is just going somewhere else in the home. E.J. has not had any psychological care related to this incident, nor is there any expectation that he will need any future medical care.

2.  **Conclusions**

The parties agree that the plaintiff's medical bills were $23,739.90. (Ex. 10.) The defendants, by their insurer, already paid $10,000 of this sum. (Ex. 20.) There being no dispute regarding this aspect of the plaintiff's claim, the court awards the plaintiff the sum of **$13,739.90** for the unpaid past medical expenses.

The plaintiff has no claim for future medical expenses.

E.J. undoubtedly experienced significant pain and distress immediately following the attack, and this pain would have continued to be severe at least until paramedics were able to administer pain medication. He would have continued to

experience pain throughout the post-surgery healing process. This pain was addressed by acetaminophen rather than narcotics, and there is no evidence that E.J. suffered any significant pain or complications aside from the fact that he was reluctant to take an oral antibiotic.

E.J. would have been prevented from fully participating in and enjoying the normal activities and pleasures of life during his recovery process. But there is no evidence of any specific, much less severe, limitations. He was physically back to normal in a couple of weeks. E.J.'s recovery appears to have been swift and without the need for extensive follow-up, subsequent procedures, or lengthy periods of incapacitation.

As his wounds healed, E.J. may have suffered distress over his appearance. However, there is no evidence to that effect.

There is evidence that E.J. suffered some anxiety associated with this incident in the form of hesitance around certain breeds of dogs and some separation anxiety. Such anxiety was minimal and did not appear to materially affect his life.

Although his father testified that E.J. appeared to become upset when seeing other injured persons, particularly those with bloody facial injuries, there is little evidence that E.J.'s reaction is marked or even disproportionate to that of peers.

In light of this evidence, the court finds by the greater weight of the credible evidence and to a reasonable degree of certainty that the sum of **$60,000** will fairly and

adequately compensate E.J. for all past pain, suffering, and disfigurement that he suffered as a result of this incident.

As for future pain, suffering, and disfigurement, E.J. may continue to suffer some anxiety associated with the incident. However, there is scant evidence to support this conclusion, and in any event the extent of such anxiety would appear to be minimal. Rather, given that he asks his parents for details, it appears that E.J.'s memory of this event has faded, although he can be expected to have some recall of the event for the rest of his life.

E.J.'s future damages are almost entirely in terms of the permanent disfigurement associated with the scars he sustained. It is exceptionally difficult to quantify such injuries. A facial scar could affect a person's self-esteem and thus have wide-ranging impacts. However, E.J.'s facial injuries have healed exceptionally well. While his scar is recognizable, many people E.J. encounters may never notice it; at a minimum it would not be the first thing that a stranger would notice when meeting him. And there is no evidence that the scar has caused or is likely to cause E.J. to be self-conscious.

The scars on E.J.'s chest and back are more pronounced, but scars on the chest are not likely to affect a person in the same manner as a facial scar. While these scars, particularly those on his chest, would be immediately recognizable to anyone who saw E.J.'s chest, the consequences of this disfigurement would be expected to be less

impactful than the comparatively minor scar to his face. Again, there is no evidence that these scars have or are likely to cause E.J. to be self-conscious.

The court finds by the greater weight of the credible evidence and to a reasonable degree of certainty that the sum of **$50,000** will fairly and adequately compensate E.J. for all future pain, suffering, and disfigurement that he suffered as a result of this incident given his age and life expectancy.

**IT IS THEREFORE ORDERED** that Jim Voutiristas and Laurie Voutiristas, jointly and severally, shall pay to the plaintiff, Edward J. Molitor, III, on behalf of his son, Edward J. Molitor, IV, the sum of **$123,739.90**, comprised of $13,739.90 in past medical expenses, $60,000 in past pain and suffering, and $50,000 in future pain and suffering. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of February, 2025.

WILLIAM E. DUFFIN
U.S. Magistrate Judge